1

2

3

4

5

6

7

8

9

10                    **IN THE UNITED STATES DISTRICT COURT**

11                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13  SANDRIKA MEDLOCK,                    CASE NO. CV F 10-2167 LJO GSA

14              Plaintiff,               **ORDER ON DEFENDANT'S MOTION TO**
                                         **DISMISS, STAY OR TRANSFER PURSUANT**
15      vs.                              **TO "FIRST-TO-FILE" RULE**
                                         (Doc. 7.)
16  HMS HOST USA, INC., et al.,

17              Defendants.
    _____/
18

19                              **INTRODUCTION**

20          Pursuant to the "first-to-file" rule, defendants Host International, Inc. ("Host International") and

21  HMS Host USA, Inc. ("HMS") seek to dismiss, stay or transfer plaintiff Sandrika Medlock's ("Ms.

22  Medlock's") class action alleging unpaid wage claims in that other class plaintiffs pursue similar unpaid

23  wage claims in a fellow district court action.  Ms. Medlock responds that defendants misapply the first-

24  to-file rule and challenges the similarity of defendants and claims in the two actions and thus the

25  supporting grounds to dismiss, stay or transfer this action.  This Court considered Host International and

26  HMS' (collectively "defendants'") alternative motion to dismiss, stay or transfer on the record and

27  VACATES the December 21, 2010 hearing, pursuant to Local Rule 230(g).  For the reasons discussed

28  below, this Court TRANSFERS this action to the Central District of California.

                                         1

# BACKGROUND

## First-Filed *Batres* Action

On August 23, 2010, plaintiffs Cesar Batres and Maria Deperez (collectively the "Batres plaintiffs") filed, on behalf of themselves and others similarly situated, their class action complaint in Orange County Superior Court (the "*Batres* action").  The *Batres* action's original complaint ("*Batres* original complaint") alleged a class action on behalf of:

> Plaintiffs and all employees, including but not limited to all employees not classified as "Exempt" or primarily employed in executive, professional, or administrative capacities (i.e. "Non-Exempt Employees") employed by, or formerly employed by, HMS HOST USA, INC., a Delaware Corporation, and any subsidiaries or affiliated companies . . . within the State of California.

The *Batres* original complaint alleged claims of:

1. Failure to pay wages and overtime to entitle recovery under California Labor Code sections 218.5, 1194 and 1199;

2. Failure to provide rest periods and compensation for non-provided rest periods to violate California Labor Code sections 226.7 and 512 and IWC Wage Order No. 5;

3. Deducting from wages payment for parking services without authorization to violate California Labor Code sections 221, 224 and IWC Wage Order No. 5;

4. Failure to timely pay wages due at termination to violate California Labor Code sections 201, 202 and 203;

5. Failure to provide itemized wage statements with deductions to violate California Labor Code sections 226(a) and 1174; and

6. Unfair business practices to violate the Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, et seq.

The *Batres* original complaint proposed a class composed of:

> All persons who are employed or have been employed by Defendants in the State of California who, within the liability period of the filing of this Complaint, have worked as a non-exempt employee and/or in any other similar position that did not consist of over 50% administrative, executive, or professional duties and were not paid all lawful wages, including, but not limited to, all regular time and/or overtime.

The *Batres* original complaint proposed subclasses composed of non-exempt current and former employees of "Defendants" who:

2

1.     "[W]ere not timely paid all lawful wages, including, but limited to, all regular time and/or overtime";

2.     "[H]ave not been provided a rest period for every four hours or major fraction thereof worked per day and were not provided compensation" and "not provided a meal period or a second meal period for each day in which such non-exempt employees worked in excess of five and/or ten hours and were not provided compensation of one hour for each day on which such rest and/or meal period was not provided"; and

3.     "[W]ere not indemnified for illegal deductions/withholding incurred from one's wages."

On September 27, 2010, the *Batres* action was removed to the U.S. District Court, Central District of California, where it remains.

After the filing of defendants' current motion, Central District U.S. District Judge Cormac J. Carney issued his December 9, 2010 order to permit the Batres plaintiffs to file their first amended complaint ("*Batres* FAC") to add Host International as a defendant.  The *Batres* FAC alleges a class action on behalf of:

> Plaintiffs and all employees, including but not limited to all employees not classified as "Exempt" or primarily employed in executive, professional, or administrative capacities (i.e. "Non-Exempt Employees") employed by, or formerly employed by, HMS HOST USA, INC., a Delaware Corporation, HOST INTERNATIONAL, INC., a Delaware Corporation, and any subsidiaries or affiliated companies (hereinafter "Defendants") within the State of California.

The *Batres* FAC alleges identical claims and proposes identical classes as the *Batres* original complaint with the exception of adding Host International as defendant and a private attorneys claim.

**This *Medlock* Action**

On September 15, 2010, Ms. Medlock filed on behalf of herself and "all persons similarly situated" her original class action complaint against defendants in Fresno County Superior Court (the "*Medlock* action").  On October 18, 2010, Ms. Medlock filed her operative First Amended Class Action Complaint ("*Medlock* FAC"), which alleges that defendants employed her as an "Admin Clerk" and "Admin HR Assistant," hourly paid positions, at Fresno Yosemite International Airport since April 2008.  The *Medlock* FAC alleges claims of:

1.     Unpaid overtime to violate California Labor Code sections 510 and 1198;

3

2.      Unpaid meal period premiums to violate California Labor Code sections 226.7 and 512(a);

3.      Unpaid rest period premiums to violate California Labor Code section 226.7;

4.      Unpaid business expenses to violate California Labor Code sections 2800 and 2802;

5.      Unpaid minimum wages to violate California Labor Code sections 1194, 1197 and 1197.1;

6.      Unlawful wage deductions to violate California Labor Code section 221;

7.      Untimely paid wages to violate California Labor Code section 204;

8.      Non-compliant wage statements to violate California Labor Code section 226(a); and

9.      Unlawful and unfair business acts and practices to violate the UCL.

The *Medlock* FAC proposes:

1.      An "Unpaid Wages Subclass" of "[a]ll non-exempt or hourly paid employees who worked for Defendants in California within four years prior to the filing of this complaint until the date of certification"; and

2.      A "Non-Compliant Wage Statement Subclass" of "[a]ll non-exempt or hourly paid employees of Defendants who worked in California and received a wage statement within one year prior to the filing of this complaint until the date of certification."

This *Medlock* action was removed to this Court on November 18, 2010.

## DISCUSSION

### The First-To-File Rule

Defendants seek to dismiss without prejudice, stay or transfer this *Medlock* action in deference to the *Batres* action pursuant to the "first-to-file" rule.

Ms. Medlock responds that the first-to-file rule "is not intended to undermine due process" and permits dismissal, stay or transfer only if the second filed action is "essentially duplicative of another case with the 'same parties and issues.'"

In *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982), the Ninth Circuit Court of Appeals explained the first-to-file rule:

There is a generally recognized doctrine of federal comity which permits a district court

4

to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. . . . Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. However, this "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration. (Citations omitted.)

The "'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of California v. U.S. Department of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).

The U.S. Supreme Court emphasizes that the solution of these problems involves determinations concerning "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," and that "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84, 72 S.Ct. 219, 221 (1952). As such, a district court's decision applying the "first to file" rule in light of considerations of sound judicial administration is reviewed for an abuse of discretion. *Pacesetter Systems*, 678 F.2d at 95.

## Substantial Similarity

Defendants note that the first-to-file rules "requires only that the claims and parties in the two actions be 'substantially similar,'" "not necessarily identical." Defendants point out that Ms. Medlock and the Batres plaintiffs seek to represent class members located "exclusively" in California and that they pursue claims against common defendants. Defendants explain that the *Batres* and *Medlock* actions "allege substantially similar, if not identical claims" addressing failure to pay hourly wages, including overtime, failure to provide rest and meal periods or compensation, unlawful deductions, failure to provide itemized wage statements, and unfair competition.

Ms. Medlock responds that the first-to-file rule requires that "the two cases are essentially duplicative in terms of claims and parties, a showing which simply cannot be made here." Ms. Medlock cautions that dismissal of a second-filed action by additional plaintiffs with distinct claims "raises the specter of denying persons their day in court."

### *Parties And Classes*

A fellow district court explains that exact identity of parties "is not required to satisfy the

first-to-file rule. The rule is satisfied if some the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 959, n. 6 (N.D. Cal. 2008); *Wright v. RBC Capital Mkts. Corp.*, 2010 U.S. Dist. LEXIS 80165 (E.D. Cal. 2010) ("With respect to both the parties and the issues, courts routinely recognize that they need not be identical in the two actions. Substantial similarity is sufficient.")

In their opening papers, defendants incorrectly stated that the Batres plaintiffs pursued claims against only Host International.  The *Batres* original complaint (supplied by defendants) named HMS as defendant.  The *Medlock* FAC names Host International and HMS as defendants.  As such, contrary to defendants' original claim, the common defendant was HMS, not Host International.  Defendants note, with a declaration from a Host International human resources analyst, that "the overwhelming majority of potential class members in Medlock have been or are employed by Host International" and that since September 15, 2006, "the only place where HMS Host USA, Inc. has employed non-exempt employees in California is Ontario Mills Mall, whereas Host International, Inc. has employed non-exempt employees at locations in 10 airports in California during the same time period."  In their opening papers, defendants contended that "only a fraction of potential class members would be specific to the Medlock complaint" and the "vast majority would be covered by the *Batres* action."

Ms. Medlock responds that defendants' motion "appears to be premised on the apparent misconception or misrepresentation" that the Batres plaintiffs "also brought suit against Host International, Inc., but did not do so." Ms. Medlock explains that the *Batres* action is not the "first-filed" action "with respect to most of the putative class members here, the employees of Host International, Inc" and "is not a forum for resolving the grievance of most of the plaintiffs here."  Ms. Medlock continues that "what is known about the classes at the time the motion is brought" determines the identity of class action parties.

In their reply papers, defendants acknowledge "there was some confusion regarding the identity of the defendants in the *Batres* matter."  Defendants note that such confusion has cleared with the *Batres* FAC's addition of Host International to render identical defendants in the *Batres* and *Medlock* actions. Defendants assert that the *Batres* FAC's "clarification nullifies plaintiff's argument regarding the notion

1  that resolution of the *Batres* complaint would not resolve 'the grievances of most of the plaintiffs here.'"

2  Defendants point to the "obvious" overlap in classes in the *Batres* and *Medlock* actions and that the

3  *Batres* action will resolve the claims of *Medlock* class members.  Defendants conclude that based on Ms.

4  Medlock's class definition and position with Host International, she qualifies that a *Batres* action class

5  member.

6      Defendants created initial confusion by claiming common defendants in the *Batres* and *Medlock*

7  actions.  The *Batres* action originally named only HMS as a defendant and thus, by defendants'

8  acknowledgment, was limited to the non-exempt employees at the Ontario Mills Mall.  The *Batres*

9  original complaint did not overlap to Host International employees to apparently exclude airport

10 employees.  The *Batres* FAC clears confusion and demonstrates common defendants in the *Batres* and

11 *Medlock* actions.  Ms. Medlock's claims of uncommon defendants is no longer viable.

12                                        ***Claims***

13     Defendants argue that the *Batres* and *Medlock* actions involve substantially similar claims under

14 California law based on a shared "central dispute" whether "non-exempt employees were properly paid

15 wages, reimbursed for expenses and provided breaks as required by California law."  Defendants further

16 point to the common "nucleus allegation: the defendants' alleged improper payment of wages, both in

17 terms of amount, timing, and business practices."  Defendants contend that this *Medlock* action's

18 inclusion of additional unpaid minimum wages and untimely paid wages claims "does not dissolve the

19 substantial similarity between the claims."

20     Ms. Medlock responds that she "brings several new and different claims against both defendants

21 not previously brought in the *Batres* action.  These new and different claims pertain to all employees and

22 both defendants, and will not be resolved by the *Batres* action."

23     "The 'first-to-file' rule requires only sufficient similarity of issues to be applied."  *Dumas v.*

24 *Major League Baseball Properties, Inc.*, 52 F.Supp.2d 1183, 1193 (S.D. Cal. 1999), *vacated on other*

25 *grounds*, 104 F.Supp.2d 1220 (S.D. Cal. 2000).  Nonetheless, when "issues in the two actions are

26 distinct," a district court does not abuse its discretion in refusing to dismiss.  *Cedars-Sinai Med. Ctr. v.*

27 *Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

28     Defendants focus on whether "the underlying complained-of conduct is almost identical."

                                           7

1   *Dumas*, 52 F.Supp.2d at 1193.   Defendants identify the complained-of conduct as "whether the

2   Defendants have properly paid their California non-exempt employees" and argue that such conduct and

3   applicable legal standards are "substantially identical" in the *Batres* and *Medlock* actions.

4          Ms. Medlock notes that specifically included in this *Medlock* action and missing from the *Batres*

5   action are "additional claims and theories of recovery" as to: (1) unpaid minimum wages under

6   California Labor Code sections 1194, 1197, and 1197.1; and (2) wages not timely paid during

7   employment under Labor Code section 204.   Ms. Medlock concludes that such claims "will not be

8   adjudicated in the *Batres* action."

9          Ms. Medlock is correct that her action raises limited, additional claims.   However, she fails to

10   establish that her other claims are not substantially similar to the *Batres* action claims.   There is

11   substantial overlap of claims between the *Batres* and *Medlock* actions to preclude finding that this

12   *Medlock* action dwarfs the *Batres* action's claims.   The recent addition of Host International to the

13   *Batres* action supports substantially similarity of claims which had been missing.   Nonetheless, Ms.

14   Medlock's claims not present in the *Batres* action militates against outright dismissal.

15          **Undue Burdens, Inconsistent Determinations And Improper Claim Splitting**

16          Defendants advocate dismissal without prejudice of this *Medlock* action to avoid undue burden

17   to this Court and defendants, inconsistent judgments, and improper claim splitting.

18          The first-to-file rule "is designed to avoid placing an unnecessary burden on the federal judiciary,

19   and to avoid the embarrassment of conflicting judgments." *Church of Scientology*, 611 F.2d at 750.

20          Defendants contend that application of the first-to-file rule promotes judicial economy to prevent

21   this Court "to hear and resolve the same issues and claims presented to the Central District" given

22   application of "precisely the same Labor Code sections against precisely the same defendants."

23   Defendants claim with application of the rule, defendants would avoid "duplicative costs of

24   simultaneous litigation, by not having to attend numerous depositions twice (or more), not having to

25   produce thousands of documents multiple times, and not having to brief the pertinent issues multiple

26   times."   Defendants further point to a "potential quagmire" if this Court and the Central District reach

27   differing decisions whether employees were properly paid.

28          Defendants continue that failure to apply the first-to-file rule is limited to "rare or extraordinary

8

circumstances, inequitable conduct, bad faith, or forum shopping." *See E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 972 (3rd Cir. 1988), *aff'd*, 493 U.S. 182, 110 S.Ct. 577 (1990). Defendants argue that no "rare or extraordinary" circumstances are present to avoid application of the first-to-file rule.

Ms. Medlock responds that given the limited potentially overlapping plaintiffs, "there is no risk of an inconsistent judgment." Ms. Medlock explains that a judgment in either action "will be specific as to whether or not the Defendants violated certain, named sections of the Labor Code with respect to the affected employees." Ms. Medlock further notes that to the extent applicable, "res judicata and collateral estoppel principles will govern."

Given the substantially similarity of claims, the threat of inconsistent judgments is a possibility but a limited one. The claimed undue burdens are no different from those involved in multi-party actions against common defendants. The parties are free to agree mutually use discovery in both actions. Neither undue burdens nor potential inconsistent judgments warrant outright dismissal of this *Medlock* action.

## Dismissal, Stay Or Transfer

Under the first-to-file rule, "the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Medical*, 125 F.3d at 769. Defendants advocate a stay and await the *Batres* action results.

"[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed." *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 629 (9th Cir. 1991). A fellow district court explains available options:

> Dismissal is proper where the court of first filing provides adequate remedies. . . . If there are concerns regarding the availability of remedies in the court of first filing, or regarding its jurisdiction over claims which might implicate a statute of limitations if dismissed by that court, or if that court is preparing to transfer its matter to the court of second filing, then the court of second filing should consider a stay. . . . Plaintiff has not raised any of these issues here, in opposition to dismissal, so it is warranted.

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 963 (N.D. Cal. 2008).

Ms. Medlock warns the dismissal of this *Medlock* action creates the risk of time barred claims such that "even minor issues with the statute of limitations weigh against dismissal." *Alltrade,* 946 F.2d

9

at 628-629.  Ms. Medlock explains that if the *Batres* action is dismissed, not properly prosecuted, or if class certification is denied, this *Medlock* action or individual actions will need to be refiled to endanger class members with expired claims.  More precisely, Ms. Medlock notes that if this *Medlock* action is dismissed, "the statute of limitations for each claim not precisely duplicated by *Batres* – and for all claims for the many plaintiffs not present in *Batres* – will be running.  As such, rather than dismissal or stay, Ms. Medlock advocates a transfer to the Central District to "permit the *Batres* court to consider consolidating the two actions as it deems appropriate."

The parties appear to acknowledge that dismissal is not realistic.  Defendants offer little meaningful support for a stay.  As such, the options boil down to denial of defendants' motion in total or a transfer to the Central District.  Ms. Medlock appears willing to accept a transfer (especially considering the alternatives).  A transfer offers potential conservation or resources and judicial economy, especially if the actions are consolidated.  Although Ms. Medlock raises valid points to maintain her action in this Court, the balance of sound judicial administration, conservation of judicial resources, comprehensive disposition of litigation, and efficiency tip in favor to transfer this *Medlock* action to the Central District.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.  DENIES dismissal or a stay of this *Medlock* action;

2.  ORDERS a transfer of this *Medlock* action to the U.S. District Court, Central District of California;

3.  DIRECTS the clerk to take necessary steps to transfer this *Medlock* action to the Santa Ana Division of the U.S. District Court, Central District of California and to close this action; and

4.  VACATES all pending matters before this Court, including the January 14, 2011 hearing on Ms. Medlock's motion to remand and the January 27, 2011 scheduling conference.

IT IS SO ORDERED.

Dated:    **December 15, 2010**                    **/s/ Lawrence J. O'Neill**
                                                    UNITED STATES DISTRICT JUDGE